```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
QI LIANG CHEN and FEI JIANG,            :
                    Plaintiffs,         :
                                        :
            -v-                         :     09 Civ. 1832 (DLC)
                                        :
JANET NAPOLITANO, Secretary of the      :     OPINION & ORDER
United States Department of Homeland    :
Security; JOHN F. GRISSOM, Acting       :
Chief, Administrative Appeals Office;   :
MICHAEL AYTES, Acting Director of the   :
United States Citizenship and           :
Immigration Service; UNITED STATES      :
CITIZENSHIP AND IMMIGRATION SERVICE,    :
                    Defendants.         :
----------------------------------------X
```

Appearances:

For plaintiffs:
Daniel Bernard Lundy
Barst & Mukamal LLP
2 Park Avenue, 19th Floor
New York, NY 10016

For defendants:
Preet Bahara, United States Attorney
David Vincent Bober, Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10004

DENISE COTE, District Judge:

Plaintiffs Qi Liang Chen and Fei Jiang filed this action for declaratory and injunctive relief following the denial of Chen's application for a waiver of inadmissibility by the United States Citizenship and Immigration Services ("CIS") and the

dismissal of Chen's appeal.[1]  The defendants, the CIS and others, filed this motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., on June 19, 2009.  For the following reasons, the motion is denied.

## BACKGROUND

The following facts are undisputed or taken from the plaintiffs' complaint.  Chen, a native and citizen of China, was paroled into the United States in 1996 after he attempted to enter the country with an altered passport.[2]  Chen married plaintiff Jiang, a United States citizen who had immigrated to the United States at age 16, on September 16, 2002.  They have two children, a son from Jiang's previous marriage and a daughter born in November 2002.  In April 2005, plaintiffs filed an I-485 application for adjustment of status, seeking to adjust Chen's status to lawful permanent resident.  Because Chen's use of an altered document to enter the United States rendered him ineligible for adjustment of status, they also filed an I-601 application along with the I-485, seeking a waiver of

---

[1] While the complaint is styled as a complaint for declaratory judgment, the relief requested by the plaintiffs includes injunctive relief.

[2] An alien arriving at a port of entry without a valid entry document is "paroled" when he or she is temporarily released from detention and permitted to remain in the United States pending review of his or her immigration status.  Ibragimov v. Gonzales, 476 F.3d 125, 131-32 (2d Cir. 2007).  "Such parole does not constitute an admission."  Id. at 132.

2

inadmissibility pursuant to 8 U.S.C. § 1182(i) on the ground that Jiang would suffer "extreme hardship" if Chen were not allowed to remain in the country.  Among the documents that Chen submitted in support of his application were copies of his income tax returns for the years 2002-2004 that he and Jiang jointly filed, bank statements, and letters from Chen's and Jiang's employers describing their positions and salaries.  In 2004, Chen and Jiang reported an adjusted gross income of $33,012.  The primary source of the couple's income was wages ($20,104), with taxable interest ($198), dividends ($25), business income ($9,095), and rental real estate ($3,600) providing secondary sources of income.  Jiang's 2004 W-2 indicates that the wages she earned as a cashier accounted for $6,768 of the couple's $20,104 total.

In August 2005, CIS issued an I-72 request for additional documents to support "Fei Jiang's claim that she will suffer extreme hardship upon [Chen's] removal from the United States." In response to the request, Chen submitted, <u>inter alia</u>, copies of the permanent resident card of Jiang's mother, as well as copies of the certificates of naturalization of Jiang's sister and brother.

CIS denied Chen's waiver of inadmissibility application on October 5, 2006, finding that Chen had "failed to show that [his] removal from the United States would result in extreme

hardship to [his] United States citizen wife." Plaintiffs timely appealed this decision to the CIS Administrative Appeals Office ("AAO"), and the AAO dismissed the appeal on January 27, 2009, again on the ground that Chen had not shown that Jiang would experience extreme hardship were he to be removed to China. The AAO's decision stated that "the entire record was reviewed" and noted that the record contained the following documents:

> A brief from counsel in support of the appeal; statements from the applicant's wife and sister; a copy of the articles of incorporation for a business, signed by the applicant; a psychological evaluation of the applicant's wife performed by a licensed psychologist; a copy of the applicant's wife's naturalization certificate; a copy of the applicant's sister's permanent resident card; a copy of a deed to a real estate owned by the applicant and his wife, and; a copy of a notorial certificate for the applicant's wife evidencing her birth.

The AAO's list of documents does not include the tax returns, bank statements or job letters, nor does it include Jiang's mother's green card or her sister's and brother's naturalization certificates.[3]

After reviewing the statement submitted by Jiang, in which she described economic and emotional hardship that she would experience were she and her children either to remain in the

---

[3] References to the applicant's sister refer to Chen's sister Wen Ying Chen. As described below, the AAO did reference Jiang's brother's naturalization certificate later in the opinion.

4

United States following Chen's removal or to follow him to China, the AAO concluded that Chen "has not established that a qualifying relative will experience extreme hardship if he is prohibited from remaining in the United States." The first reason that the AAO gave for its decision was that

> the applicant has not submitted sufficient documentation of his family's economic needs, his income, or any other sources of income they have. The applicant's wife stated that the applicant is the primary source of income, but she did not state what secondary sources they have, or the amounts of such income.

The AAO also found that Chen "has not provided any evidence to support that he or his wife would experience difficulty finding employment in China."

Turning to the question of emotional hardship, the AAO concluded that Chen had not distinguished the emotional hardship that Jiang would suffer "from that which is commonly experienced by those separated from family due to the inadmissibility of a spouse," and that he had not shown that his children would have difficulty adapting to life in China. Next, the AAO considered Jiang's attestation that she cares for her elderly mother, who resides with Chen and Jiang, stating that "the applicant has not submitted any documentation to show that his mother-in-law resides in the United States, that she resides with the applicant and his wife, or that she has been diagnosed with

5

health conditions that require assistance." The AAO also stated that, aside from the naturalization certificate of Jiang's brother, Chen "has not submitted any documentation to support that his wife has other family in the United States." The AAO thus concluded that "the applicant has not provided adequate documentation to show that his wife would endure significant additional emotional hardship due to separation from her family members should she return to China." On March 20, 2009, CIS denied Chen's application for adjustment of status to permanent resident because the denial of his application for a waiver of inadmissibility meant that Chen remained inadmissible and thus ineligible for adjustment of status.

Plaintiffs filed this lawsuit on February 26, 2009 to challenge the denial of the application of the waiver of inadmissibility, naming as defendants Secretary of Homeland Security Janet Napolitano, Acting Chief of the AAO John F. Grissom, Acting Director of the CIS Michael Aytes, and the CIS. Plaintiffs do not contest Chen's inadmissibility. Rather, they aver that the denial of the waiver of inadmissibility was based on "an erroneous interpretation of the hardship standard, mischaracterizations of the record, and an erroneous and overly stringent evidentiary burden." Acknowledging that, as discussed below, the Immigration and Nationality Act ("INA") strips courts of jurisdiction to review the Attorney General's discretionary

6

decisions to waive or to refuse to waive inadmissibility, 8 U.S.C. § 1182(i)(2), the complaint alleges that the denial was not in accordance with established law and constitutional due process, and falls outside the boundaries of the jurisdiction-stripping provision.

The defendants (collectively, "the Government") moved to dismiss the complaint on June 19, 2009 pursuant to Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction, arguing that the decision to waive inadmissibility on grounds of extreme hardship is discretionary and therefore, under the INA's jurisdiction-stripping provision, not subject to judicial review.  The plaintiffs filed an opposition brief on July 17.  The Government did not file a reply.

## DISCUSSION

"Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  A

court must "accept as true all material factual allegations in the complaint," Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted), but must refrain from "drawing from the pleadings inferences favorable" to the party asserting jurisdiction.  APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).

The Government asserts that the relevant statutory framework precludes judicial review of the decision on the waiver of inadmissibility in this instance.  It argues that the decision regarding whether "extreme hardship" has been established is entrusted to the Attorney General's discretion and that the plaintiffs merely dispute the Government's fact-finding and its discretionary decision, and thus do not raise a question of law or constitutional claim required for subject-matter jurisdiction.

1. Statutory Framework

a. Adjustment of Status and Waiver of Inadmissibility

The Attorney General may adjust the status of an eligible alien present in the United States to the status of lawful permanent resident where the alien: 1) has been "paroled" into the United States; 2) has applied for adjustment of status; 3) possesses an "immediately available" immigrant visa; and 4) is "admissible to the United States for permanent residence."  INA

8

§ 245(a), 8 U.S.C. § 1255(a); Delgado v. Mukasey, 516 F.3d 65, 68 (2d Cir. 2008).  Aliens entering the country with fraudulently altered passports are "inadmissible" under 8 U.S.C. § 1182(a)(6)(C)(i) and are therefore ineligible for adjustment of status.[4]  Camara v. Dep't of Homeland Sec., 497 F.3d 121, 122 n.2 (2d Cir. 2007) (per curiam).  The decision to adjust an alien's status is committed to the Attorney General's discretion.  Brito v. Mukasey, 521 F.3d 160, 165 (2d Cir. 2008).

The Attorney General may waive the inadmissibility of an alien who has been deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) because he or she entered the country based on fraud or misrepresentation of a material fact.  Where the inadmissible alien is the spouse of a United States citizen, "the Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) of this section . . . if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen."  8 U.S.C. § 1182(i).

---

[4] 8 U.S.C. § 1182(a)(6)(C)(i) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."  Id.; Emokah v. Mukasey, 523 F.3d 110, 112 n.2 (2d Cir. 2008).

Factors relevant to the assessment of "extreme hardship" include, but are not limited to:

> the presence of lawful permanent resident or United States citizen family ties to this country; the qualifying relative's family ties outside the United States; the conditions in the country or countries to which the qualifying relative would relocate and the extent of the qualifying relative's ties to such countries; the financial impact of departure from this country; and, finally, significant conditions of health . . . .

In re Cervantes-Gonzalez, 22 I. & N. Dec. 560, 565-66 (B.I.A. 1999) (cited by Zhang v. Gonzales, 457 F.3d 172, 175 (2d Cir. 2006)). "[F]actual and discretionary decisions" underlie the determination that an applicant for § 1182(i) relief has failed to meet the 'extreme hardship' requirement. Emokah v. Mukasey, 523 F.3d 110, 119 (2d Cir. 2008) (citation omitted).

b. Judicial Review of Decisions Regarding Waivers

Courts "lack jurisdiction to review challenges to factual and discretionary determinations leading to the denial of a petition for review where a jurisdiction-denying provision of the INA is implicated, unless, of course, the petitioner raises a constitutional claim or a question of law." Camara, 497 F.3d at 124. The INA provides that "[n]o court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver." 8 U.S.C. § 1182(i)(2); see also 8

10

U.S.C. § 1252(a)(2)(B)(i) (depriving courts of jurisdiction to review "any judgment regarding the granting of relief under ... section 1182(i)"). Citing these provisions, the Second Circuit has reiterated that "the § 1182(i)(1) hardship determination is discretionary, and we are barred by statute from reviewing it." Camara, 497 F.3d at 124 (citation omitted).

Because of the presence of jurisdiction-stripping provisions, the plaintiffs must demonstrate that the adjudication of their petition "raises a constitutional claim or a question of law" to establish subject-matter jurisdiction. Emokah, 523 F.3d at 119 (citation omitted).[5]  "If the asserted constitutional claim or question of law is colorable, the courts have jurisdiction to review it, whether or not it is ultimately found to be meritorious," although "the [constitutional or legal] argument advanced must, at the very least, have some potential validity." Barco-Sandoval v. Gonzales, 516 F.3d 35, 41 n.6 (2d Cir. 2008) (citation omitted).

"A 'constitutional claim' or 'question of law' may arise for example in fact-finding which is flawed by an error of law or where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or

---

[5] The Second Circuit has defined "questions of law" as "the same types of issues that courts traditionally reviewed in habeas review over Executive detentions." Barco-Sandoval, 516 F.3d at 39 (citation omitted).

based on a legally erroneous standard." Id. at 39 (citation omitted). Fact-finding flawed by an error of law may occur where the adjudicator "states that his decision was based on petitioner's failure to testify to some pertinent fact when the record of the hearing reveals unambiguously that the petitioner did testify to that fact." Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 329 (2d Cir. 2006).

In Mendez v. Holder, 566 F.3d 316 (2d Cir. 2009) (per curiam), the Court of Appeals held that it had jurisdiction to review an Immigration Judge's ("IJ's") refusal to find that a petitioner seeking cancellation of removal, a form of relief that requires demonstrating an "exceptional and extremely unusual hardship" and review of which is "beyond [the court's] jurisdiction . . . except in those rare cases where the BIA decision on whether this kind of hardship exists is made 'without rational justification or based on an erroneous legal standard.'" Id. at 322 (citation omitted). The court found that the IJ's decision rested on factfinding flawed by an error of law because the IJ stated that "[t]he only evidence respondent has offered" regarding his daughter's health, which the petitioner argued would be imperiled were he removed to Mexico, was a letter from a physician supporting the conclusion that the daughter did not suffer from severe asthma. Id. at 323. The IJ's statement ignored the petitioner's extensive

12

testimony regarding his daughter's condition, in which he explained that she suffers from "around twenty-five asthma attacks each year, several of which require emergency visits to the hospital" and described special equipment that she must use to control her asthma.  Id. at 322.  While noting that "the agency does not commit an 'error of law' every time an item of evidence is not explicitly considered," the court concluded that, because important facts have been totally overlooked or seriously mischaracterized, the IJ's mischaracterization of the evidence was serious enough that "an error of law has occurred."[6]  Id. at 323.

At the same time, courts are wary of attempts to "secure review by invoking the rhetoric of a 'constitutional claim' or

---

[6] The Government argues that the petitioner in Mendez had persuaded the court that the statute at issue in that case did not preclude judicial review because it did not commit the decision at issue to the Attorney General's discretion, and that Mendez is therefore distinguishable from the instant case.  The Government mischaracterizes Mendez.  While the court stated that "petitioner has presented substantial arguments" in favor of finding that the cancellation of removal statute was distinguishable from other statutes requiring a demonstration "to the satisfaction of the attorney general," as does the provision at issue here, 8 U.S.C. § 1182(i), and that jurisdiction therefore existed, it ultimately rejected petitioner's position.  Mendez, 566 F.3d at 322.  Noting that it was bound by prior Second Circuit decisions, the court followed Barco-Sandoval, 516 F.3d at 39, which held that "the determination of whether 'exceptional and extremely unusual hardship' is present for the purposes of cancellation of removal is beyond our jurisdiction to review," and concluded that, as a result, "[w]e therefore find ourselves unable to accept Petitioner's arguments set out above."  Mendez, 566 F.3d at 322.

'question of law' to disguise what is essentially a quarrel about fact-finding or the exercise of discretion." Xiao Ji Chen v. United States Dep't of Justice, 471 F.3d 315, 330 (2d Cir. 2006). See, e.g., id. at 332 ("[t]his petitioner's challenge is merely an objection to the IJ's factual findings and the balancing of factors in which discretion was exercised"); see also Saloum v. United States CIS, 437 F.3d 238, 243 (2d Cir. 2006) (the "talismanic invocation of the language of 'due process'" is not sufficient to create jurisdiction unless there is "at least a colorable constitutional violation") (citation omitted).  Nor will courts exercise jurisdiction to review "any legal argument that is so insubstantial and frivolous as to be inadequate to invoke federal-question jurisdiction." Barco-Sandoval, 516 F.3d at 40.

2. Subject Matter Jurisdiction and Plaintiffs' Claims

There is jurisdiction over the complaint because a colorable question of law exists regarding whether the AAO's decision was flawed by an error of law. Mendez, 566 F.3d at 322.  As in Mendez, 566 F.3d at 322, the AAO's decision rests on factfinding which is flawed by an error of law because it represents that Chen did not submit several pieces of important evidence, namely, evidence of the family's economic condition and the presence of Jiang's relatives in the United States, when

14

he did submit such evidence.  See also Xiao Ji Chen, 471 F.3d at 329.

The very first factor that the decision examined was the "the financial impact of [Chen's] departure from this country." In re Cervantes-Gonzalez, 22 I. & N. Dec. at 566.  When determining that Chen had not demonstrated that Jiang would experience extreme economic hardship, the AAO faulted Chen for insufficiently documenting "his family's economic needs, his income, or any other sources of income they have."  The AAO also noted that "Jiang stated that the applicant is the primary source of income, but she did not state what secondary sources they have, or the amounts of such income."  The couple, however, submitted their three most recent tax returns, which included primary and secondary sources of income, as well as bank statements and letters from their employers.  The AAO's decision does not reflect any of this evidence of the family's income.  Moreover, this financial information was excluded from the list of documents that the AAO represented were contained in the record in the beginning of his decision.  Taken together, the AAO's list of documents and the finding that Chen did not submit evidence of income contradicts the record.  While "the agency does not commit an 'error of law' every time an item of evidence is not explicitly considered," Mendez, 566 F.3d at 323, the AAO

appears to have missed arguably the most critical and comprehensive evidence of Jiang's income and economic needs.

Second, the AAO's decision also misrepresented the record concerning Jiang's family ties to the United States, a factor it considered when determining the lack of extreme hardship.  See also In re Cervantes-Gonzalez, 22 I. & N. Dec. at 565 (one factor in an assessment of extreme hardship is "United States citizen family ties to this country").  The AAO observed that "the applicant has not submitted any documentation to show that his mother-in-law resides in the United States."  It proceeded to find that, aside from the naturalization certificate of Jiang's brother, "the applicant has not submitted any documentation to support that his wife has other family ties in the United States."  In so doing, the AAO appears to have ignored the permanent resident card of Jiang's mother and the naturalization certificate of her sister, both of which were submitted in response to the I-72 request for information (as was the naturalization certificate for Jiang's brother).

Again, this is no small error.  Jiang testified that she cares for an elderly mother in the United States, which, if true, represents both a significant responsibility and family relationship.  The purported lack of any documentation regarding the mother's presence in this country in part led the AAO to conclude that, aside from her brother, there was no evidence

16

that Jiang had any family ties in this country at all.  This holding is directly contrary to the evidence submitted by Chen.[7]  That the AAO mentioned only Jiang's brother, and not her sister, adds to the error.

The flaws in the AAO's decision occurred in two aspects of the determination of "extreme hardship" -- the loss of economic support and the United States citizen's family ties –- comprising the standard as articulated in In re Cervantes-Gonzalez, 22 I. & N. Dec. at 565-66, and as applied in the AAO's own decision.  The mistaken perception of a lack of evidence shaped the AAO's findings with respect to both factors.  The AAO's reasoning appears to be based on statements that contradict and ignore documents in the record.  This suggests the kind of error of law that, following Mendez and Xiao Ji Chen, permits a court to exercise subject-matter jurisdiction.

As stated above, the Government did not file a reply brief. It has not defended or explained the AAO's misrepresentation of the record regarding the family's economic situation and Jiang's

---

[7] It is possible that the AAO did not consider a naturalization certificate or a green card sufficient evidence of residence in the United States, only of eligibility, or that the decision was principally based on a lack of information about the mother's health condition, rather than a failure to show her residence in the United States.  "But the bare text of the holding leaves open an inference of error."  Mendez, 566 F.3d at 323 n.5 (noting that the IJ's comment that the "only evidence" presented regarding the asthma was "intended as a reference to the only medical evidence" but declining to refuse jurisdiction because of the "inference of error").

familial ties to the United States. Its opening brief disputes that the record supports a constitutional claim, but it does not address whether the AAO's reasoning created an error of law because it ignored record evidence. It is on that basis that subject-matter jurisdiction to review the determination of "extreme hardship" exists.

## CONCLUSION

The Government's June 19, 2009 motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is denied.

SO ORDERED:

Dated:   New York, New York
         August 26, 2009

_____
DENISE COTE
United States District Judge